SOMMERVILLE, J.
Plaintiff sues defendant for damages in the sum of $10,000 because of the death of his son, aged 19 years, through the alleged fault and negligence of defendant and its employes. He divides his claim into two parts: $5,000 for anguish and mental suffering by him; and $5,000 for punitory, or exemplary, damages.
Defendant filed a plea to the jurisdiction of the court, which was overruled. It has not been presented for discussion here; and, as there is no evidence in the record in support of it, it will be considered as abandoned.
[1] Defendant also filed an exception of no cause of action, based upon the theory that recovery could not be had on the part of a third person for anguish and mental suffering because of the death of another, when the claim therefor is unaccompanied with demand for other actual damages.
The court in Bourg v. Brownell-Drews Lumber Co., 120 La. 1023, 45 South. 972, 124 Am. St. Rep. 448, holds the contrary doctrine to prevail in this state. Injury to feelings is an element in actual damages. The exception was properly overruled.
Plaintiff alleges that his minor son acting within the scope of his employment with defendant met with death through the fault and negligence of defendant and its employés; that his son was charged with the care of three paddy machines operated in the rice mill of defendant; that these paddy machines, or separators, were defective in construction and dangerous to handle and operate, and that they were veritable death traps in themselves; that they had been removed from another rice mill of defendant because they were dangerous, and installed in the Eureka Rice Mill, belonging to defendant, in Estherwóod, La. Plaintiff particularizes that the slides attached to the spout over the paddy machine, and which his son was charged with adjusting for the proper distribution of rice, were eight to ten feet above the floor, thus making it necessary for him to climb to the top of, and stand on, the frame of the machine to adjust the slides; that his son fell from the top of said machine, and was almost instantly killed. He alleges, further, that alongside of and close to the machine from which his son fell was a drive chain not incased, in which his son’s foot caught while the chain was in motion, which no doubt assisted in his death. He further alleges lack of instructions and warnings to his son by defendant and its employés.
Defendant in its answer pleads the general issue, after admitting the death of plaintiff’s son at the time and place named, and alleges contributory negligence on his part.
There was trial before a jury, verdict for *297 plaintiff, and judgment for $2,000. Plaintiff lias answered the appeal, and asks for an increase of the judgment to $10,000.
[2] Plaintiff’s allegation that the paddy machines of defendant were removed from its mills at Gueydan because they were dangerous is not supported by any testimony whatever. It is successfully contradicted by the testimony for defendant. His allegation that the “three paddy machines were defective in construction and dangerous to handle and operate, and were veritable death traps in themselves,” is not supported by any evidence. It is contradicted by several witnesses for defendant, as well as by Lee Wooten, son of plaintiff, and witness for him, who says that he secured the position with defendant for his brother Harry, the deceased; that he “did not think it was a dangerous place.” “Every part of that machinery is apparent and open to view.” And he answered, “Yes, sir,” to the question:
“Any intelligent man could go by that machinery, and with exercising proper care and caution, having in view all of the machinery, could he not avoid an accident?”
Plaintiff’s allegation that the machines, and particularly the one from which his son fell, were faultily, carelessly, and unskillfully constructed, is not supported by any evidence; and it is contradicted by the testimony of the engineer and the mechanic who installed them in defendant’s mill.
[3] Plaintiff next alleges that the slide attached to the spout above the machine or separator and which fed it was some 8 or 10 feet above the floor, out of reach of his son, and that it was absolutely necessary for him to climb, on the top of said paddy machine in order to operate said slide, which was the duty assigned him, and which he was engaged in doing when he was killed. The testimony of Prank Wooten, son and witness for plaintiff, is that the slides were 7 feet 2 inches from the floor. Prank Giozza, a fellow workman, says that it was unnecessary to climb on top of the machine to feed it. He erected the machine; and his testimony is supported by that of John R. Gray, the superintendent, and Prank Walker, the mechanical engineer, of defendant. The evidence further shows that the slides did not have to be adjusted after once being opened in the morning, as the supply or flow of rice was regulated by a screw at the end of the machine within easy reach of the operator; also, that, if the slides required attention, they might be reached by a man of ordinary height from the floor, and by a short man from the top of the box over the conveyor, which was 9 inches from the floor, and which ran under the center of the machine.
If the deceased climbed to the top of the machine to adjust the slides as testified to, he did an unnecessary and useless act; and, if he fell therefrom, he alone was to blame. The defendant company was not at fault, and is therefore not responsible in damages to plaintiff.
In his petition plaintiff further alleges that alongside of the machine from which his son fell was a drive chain or a cogwheel in operation not incased, and “which no doubt assisted in his death.”
The evidence is that this drive chain was very loose, hanging some 10 inches apart as it slowly revolves on the cogwheel, and that, when the deceased was picked up, his leg, not his foot, was between the two parts of the revolving chain, without touching it in any way, with his foot resting on the paddy machine. There was no evidence that this chain touched the deceased.
[5] Testimony was offered by plaintiff to the effect that his son was charged with keeping the machinery in connection with the separators oiled and in running order, although there is no allegation to that effect in his petition. Objection was made to this evidence by defendant, and overruled. This was error. The testimony was not respon *299 sive to any allegation in the petition. Sauer v. Oil Co., 43 La. Ann. 707, 9 South. 566.
Plaintiff alleges that his son was employed to adjust slides just above the machines, and he offered the witness Higginbotham to show that he was thus engaged when he fell, striking his head against the edge of a step and killed. And the irrelevant testimony with reference to the machinery overhead found in the record does not support plaintiff’s allegation that there was fault and negligence on the part of defendant. The deceased was directed to oil the machinery in the morning before it was started; and, if he suspected that an oil box had become heated, he should have used a ladder to ascertain the condition of the box, which ladder was conveniently placed for that purpose. But Mr. Higginbotham, witness for plaintiff, and the only witness to any part of the accident, says that the deceased was operating the slide by means of which the machines were being fed; and he was not therefore oiling the machinery or investigating a supposed hot box. Further, the hot boxes which he was charged by the miller to report upon were attached to the paddy machines, and not placed over them.
The verdict and judgment are set aside, the demand of plaintiff is rejected, and the suit is dismissed, with costs in both courts.